UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN THE MATTER OF AN APPLICATION OF THE UNITED STATES FOR AUTHORIZATION TO OBTAIN LOCATION DATA CONCERNING:<br><br>A CELLULAR TELEPHONE ASSIGNED CALL NUMBER (561) 236-1421, AND BEARING INTERNATIONAL MOBILE SUBSCRIBER IDENTITY NUMBER 310410343947477 AND ANY SUBSEQUENTLY ASSIGNED TELEPHONE NUMBER, AND<br><br>A CELLULAR TELEPHONE ASSIGNED CALL NUMBER (347) 414-0954, AND BEARING INTERNATIONAL MOBILE SUBSCRIBER IDENTITY NUMBER 310410320168544 AND ANY SUBSEQUENTLY ASSIGNED TELEPHONE NUMBER | M. J. Docket No. *10m - 1153-JGD*<br><br>AFFIRMATION IN SUPPORT OF APPLICATION<br><br>**FILED UNDER SEAL** |

I, Robert R. Cerra, being duly sworn, depose and state as follows

1. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I am a Massachusetts State Trooper presently assigned to the Office of the Attorney General, Massachusetts State Police ("MSP") Detective Unit, Enterprise and Major Crimes Division. Since June 2010, I have been a Task Force Agent with the United States Drug Enforcement Administration (DEA) assigned to the DEA Boston Office.

2. I have an Associates of Science degree in Criminal Justice from Massachusetts Bay Community College, and I have been a member of the Massachusetts State Police since my graduation from the State Police Academy in New Braintree in April 2005. Prior to my current assignment, I was employed as a Massachusetts State Trooper assigned to the Division of Field

Services, working in uniform at the Leominster and Revere barracks. Prior to my employment as a Massachusetts State Trooper, I was a firefighter in the City of Newton. I was so employed in Newton since September 2001. Prior to that, I served in the United States Marine Corps where I was promoted to the rank of Sergeant.

3.      My duties within the Office of the Attorney General include the investigation of narcotics related offenses committed by criminal organizations. My current assignment includes both undercover and plainclothes investigations of people and organizations engaged in the distribution of controlled substances in Massachusetts. These investigations have utilized not only physical surveillance and undercover assignments, but also the installation of GPS trackers, court-ordered electronic interceptions, and the execution of search warrants. In conjunction with these assignments, I have assisted the United States Drug Enforcement Administration, the United States Bureau of Alcohol Tobacco and Firearms, the Federal Bureau of Investigations, the United States Postal Service, the United States Attorney's Office, District Attorney's Offices, and various local police departments.

4.      During the past five years, I have attended and completed the Drug Enforcement Administration ten-day Narcotics Investigator Course, the week-long Iowa National Guard Clandestine Drug Laboratory Course, the Technical Technologies Incorporated week-long Electronic Surveillance course, and the three day U.S. Department of Justice Methamphetamine Investigative Workshop.

5.      In addition to my formal training, I have also worked with and consulted numerous agents and law enforcement officers who have investigated drug distribution and trafficking throughout the United States. I have participated in numerous narcotics investigations, debriefed or

participated in debriefings of numerous defendants, informants, and witnesses who had personal knowledge of major narcotics trafficking organizations. I have had the opportunity to make methamphetamine-related arrests; I have conducted interviews and debriefings of suspected dealers and users of methamphetamine; I have interviewed confidential informants and sources of information regarding drug distribution; and I have attended training in the investigation of drug trafficking.

6. Based on my training and experience, I am familiar with the methods of operation employed by narcotics traffickers operating at the local, statewide, national, and international levels, including the distribution, storage, and transportation of narcotics and the collection of drug proceeds. I am aware that drug traffickers commonly use voice and text messages sent over cellular telephones in furtherance of their drug trafficking activities and frequently change cellular telephone numbers and cellular telephones in an effort to thwart law enforcement's use of electronic surveillance. I am also aware that drug traffickers often speak in vague, guarded, or coded language when discussing their illegal business in an effort to further prevent detection. I am familiar with the common appearance, packaging, texture and smell of the narcotics listed above.

7. My narcotics training has familiarized me with the general characteristics of methamphetamine distributors. They are typically extremely surveillance-conscious and have a good understanding of methods used by law enforcement agencies to investigate their activities. For example, they employ counter-surveillance tactics to avoid physical surveillance.

8. I have personally participated in the investigation of the people named in this affidavit since approximately January 2010. I am also familiar with the facts and circumstances of this investigation from oral and written reports made to me by other members of the Massachusetts State

Police and federal and local law enforcement agencies, as well as from my review of text messages obtained through the execution of state search warrants.

9. I submit this affidavit in support of an application for an order pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A), authorizing agents of DEA and the MSP to ascertain the physical location, including but not limited to E-911 Phase II data (or other precise location information), for two telephones for a period of thirty (30) days:

    a. the cellular telephone assigned call number **561-236-1421**, a pre-paid AT&T telephone for which no subscriber is listed, and for which the billing address is 17330 Preston Road, Dallas, Texas, and bearing International Mobile Subscriber Identity ("IMSI") number 310410343947477 (hereinafter "**Harakaly Phone # 1**"); and

    b. the cellular telephone assigned call number **347-414-0954**, an AT&T cellular telephone subscribed to Hartford Corporation, 1234 Gophone Way, New York, New York, and bearing IMSI number 310410320168544 (hereinafter "**Harakaly Phone # 2**").

The information requested is referred to herein as the "Requested Information."[1]

10. I believe that, based on the facts set forth herein, probable cause exists to believe that the Requested Information will lead to evidence of the following offenses: (a) the distribution of controlled substances in violation of 21 U.S.C. § 841(a)(1); (b) the use of a communication facility

---

[1] Such information shall, where other information is unavailable, include records reflecting the tower and antenna face ("cell site") used by the Target Telephone at the start and end of any call. In requesting cell site information, the Government does not concede that such cell site records – routinely retained by wireless carriers as business records – may only be obtained via a warrant issued on probable cause. See In re Application, 460 F. Supp. 2d 448 (S.D.N.Y. 2006) (authorizing prospective acquisition of cell-site records under combined authority of 18 U.S.C. 2703(d) & 3121 et seq.).

in the commission of narcotics trafficking offenses in violation of 21 U.S.C. § 843(b); (c) conspiracy to commit controlled substance offenses in violation of 21 U.S.C. § 846; and (d) money laundering offenses, in violation of 18 U.S.C. §§ 1956 and 1957 (the "Target Offenses"), as well as the identification of individuals who are engaged in the commission of these offenses.

11. In addition, for the reasons set out in this affidavit, I believe that the Requested Information is relevant to the ongoing investigation of the Target Subjects. Additionally, I believe there exist specific and articulable facts showing that there are reasonable grounds to believe that the Requested Information is relevant and material to an ongoing criminal investigation.

12. I have personally participated in the investigation described below. I am familiar with the facts and circumstances of the investigation through my personal participation; from discussions with other agents of DEA and MSP, and other law enforcement officers; from my discussions with witnesses involved in the investigation; and from my review of records and reports relating to the investigation. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the information was provided by another DEA agent or a member of the MSP, or another law enforcement officer or witness who may have had either direct or hearsay knowledge of that statement and to whom I have spoken or whose reports I have read and reviewed. Such statements are among many statements made by others and are stated in substance and in part unless otherwise indicated. Since this affidavit is being submitted for the limited purpose of securing an order authorizing the acquisition of the Requested Information, I have not included details of every aspect of the investigation. Facts not set forth herein are not being relied on in reaching my conclusion that there is more than sufficient evidence to support the issuance of the requested order. Nor do I request that this Court rely on any facts not set forth herein in reviewing this application.

## BRIEF SUMMARY OF THE UNDERLYING INVESTIGATION

13. The DEA and MSP are conducting an investigation into a methamphetamine distribution network whose members include Erik HARAKALY, Scott RAMSDEN, Robert KING, Edmund LEVINE, and Jack VENZER. Eric HARAKALY supplies RAMSDEN and KING with methamphetamine, and Edmund LEVINE transported methamphetamine to RAMSDEN and others on behalf of HARAKALY. VENZER re-distributes methamphetamine in furtherance of the conspiracy.

14. On September 23, 2010, a federal grand jury returned an indictment charging HARAKALY, RAMSDEN, KING, LEVINE, and VENZER with conspiracy to possess with intent to distribute methamphetamine and GHB, in violation of 21 U.S.C. § 846 and 841(a)(1) in Case Number 10-10302-RGS.

15. The investigation has relied on several methods of evidence collection, including the court-authorized interception of calls and text messages over two telephones (referred to herein as "Target Telephone # 1" and "Target Telephone # 2").[2] RAMSDEN is the user of Target Telephone # 1, and KING is the user of Target Telephone # 2. HARAKALY has been intercepted during the

---

[2] On July 7, 2010, the Honorable Nancy Gertner, United States District Court Judge, District of Massachusetts, signed an Order authorizing the interception of wire communications (including voice mail and text messages) over a telephone used by RAMSDEN (referred to herein as "Target Telephone # 1").

On July 28, 2010, the Honorable Nancy Gertner, United States District Court Judge, District of Massachusetts, signed an Order authorizing the continued interception of wire communications (including voice mail and text messages) over Target Telephone # 1, and authorizing the interception of wire communications (including voice mail and text messages) over a telephone used by KING (referred to herein as "Target Telephone # 2").

On September 7, 2010, the Honorable Nancy Gertner, United States District Court Judge, District of Massachusetts, signed an Order authorizing the interception of wire communications (including voice mail and text messages) over Target Telephones # 1 and # 2. The interception of Target Telephones # 1 and # 2 is ongoing.

investigation coordinating the shipment of methamphetamine to RAMSDEN. Arrests and seizures of methamphetamine have been made as a result.

16. HARAKALY uses several phones, including Harakaly Phones # 1 and # 2 and others. In addition, HARAKALY uses Google Voice. On information and belief, Google Voice is a service that allows HARAKALY to make telephone calls from a cell phone, land line, or computer without revealing the telephone number from which he is actually calling. Thus, for example, HARAKALY can make a call from Harakaly Phone # 1, but toll records would not show an incoming call from Harakaly Phone # 1. Instead, they show an incoming call from the number assigned to HARAKALY's Google Voice account. Notwithstanding HARAKALY's use of Google Voice to conceal the origin of many of his communications, investigation has revealed that HARAKALY continues to use Harakaly Phones # 1 and # 2.

## ERIC HARAKALY

17. HARAKALY lives in Phoenix, Arizona. Although HARAKALY does not have a permanent address, I believe he often stays at a Hyatt hotel in Phoenix. Based on intercepted communications, I also believe that HARAKALY maintains a storage facility in which he keeps drugs, drugs proceeds, and other evidence of the Target Offenses. To date, investigators have been unable to find or conduct surveillance of HARAKALY's storage site.

18. The Requested Information will give investigators the location of Harakaly Phones # 1 and # 2, which I believe are used by, and in the possession of, HARAKALY himself. Knowing the location of Harakaly Phones # 1 and # 2 is important because I believe that HARAKALY maintains evidence of the Target Offenses in the hotel rooms in which he stays and at a storage facility that I believe he visits periodically. In other words, I believe that the Requested Information

will lead to evidence of the Target Offenses, including drugs and documents, records, and other information recording HARAKALY's drug business and identifying people engaged in the commission of these offenses with him.

## HARAKALY PHONE # 1

19. Harakaly Phone # 1 is a pre-paid phone for which the user name is simply "PREPAID CUSTOMER," with a billing address in a shopping mall in Dallas, Texas. Based on my training and experience, it is common for people involved in illegal activity to purchase pre-paid phones because no user name or true billing address need be given to the service provider.

20. At 6:29 p.m. on September 8, 2010, a call was made from Harakaly Phone # 1 to RAMSDEN and intercepted as part of this investigation. I was able to recognize HARAKALY's voice (as the caller) and RAMSDEN's voice from previously intercepted calls. During this call, HARAKALY confirmed that a shipment of drugs was en route, saying "I think it's fine. I'm . . . 100 percent think it's fine." RAMSDEN said, "Alright," and the two continued to talk about the method they were using to conceal the true nature of the package. For example, RAMSDEN asked, "You put like a different name with sloppy initials or something?" HARAKALY answered, "Yeah. Yeah."

21. Based on the call described in the preceding paragraph and subsequent contacts between Harakaly Phone # 1 and both RAMSDEN and LEVINE, I believe that HARAKALY is the user of Harakaly Phone # 1. Furthermore, I know from telephone toll records that Harakaly Phone # 1 is still in use as recently as September 24, 2010 (the last day for which I have toll records for this phone).

22. Based on all of the foregoing, I believe that the Requested Information will (a) enable investigators to locate Harakaly Phone # 1 and (b) lead to evidence regarding the Target Offenses.

## HARAKALY PHONE # 2

23.     Harakaly Phone # 2 is a pre-paid phone which was activated on September 17, 2010, and for which the user name is "HARTFORD CORPORATION," with a billing address of 1234 Gophone Way, New York, New York. As noted above, it is common for people involved in illegal activity to purchase pre-paid phones because no user name or true billing address need be given to the service provider.

24.     In the early morning hours of September 18, 2010, a series of text messages between Harakaly Phone # 2 and RAMSDEN was intercepted as part of this investigation. During this series of text messages, HARAKALY and RAMSDEN discussed another pending shipment of methamphetamine from HARAKALY to RAMSDEN. For example, at 12:43 a.m. on September 18, HARAKALY sent a heavily coded text to RAMSDEN that read in part, "i am very sorry but couldnt get either gal 4 tom . . .." I believe that HARAKALY was telling RAMSDEN that he was unable to send a shipment of drugs for the following day ("couldnt get either gal 4 [for] tom[orrow]").

25.     RAMSDEN was apparently unsure of the meaning of HARAKALY's text, however, and replied at 12:47 a.m., "Can you spell it out in hush, or just tell me when and how I will get breakfast?" I know from this investigation that "hush" is a reference to Hush Mail, which is a service that allows users to communicate via encrypted email. RAMSDEN and HARAKALY use Hush Mail in furtherance of the Target Offenses. Furthermore, I know that RAMSDEN and HARAKALY use the word "breakfast" and the expression "get breakfast" to refer to shipments of methamphetamine and the receipt of shipments of methamphetamine. In response, HARAKALY sent a text that read, "Yes."

26. Therefore, I believe that during these text messages, HARAKALY and RAMSDEN were discussing a pending shipment of methamphetamine and agreeing to use Hush Mail to arrange the details of the transaction. Significantly for the purpose of this affidavit, it is clear that HARAKALY was using Harakaly Phone # 2.

27. Based on intercepted communications and public internet sources, I believe that HARAKALY works at "The Hartford Group" in Phoenix, Arizona. The fact that Harakaly Phone # 2 is subscribed to in the name of "Hartford Corporation" is an additional link between HARAKALY and Harakaly Phone # 2.

28. Based on the texts described in the preceding paragraphs, I believe that HARAKALY is the user of Harakaly Phone # 2. Furthermore, toll records show that Harakaly Phone # 2 is still in use as of September 25, 2010 (the last day for which I have toll records for this phone), and I believe that Harakaly continues to use Harakaly Phone # 2.

29. Based on all of the foregoing, I believe that the Requested Information will (a) enable investigators to locate Harakaly Phone # 2 and (b) lead to evidence regarding the Target Offenses.

## AUTHORIZATION REQUEST

30. Based on the foregoing, there is probable cause to believe that the Requested Information will lead to evidence regarding the Target Offenses. The Requested Information is necessary to determine the location of HARAKALY so that law enforcement agents can conduct physical surveillance of HARAKALY in connection with the acquisition, storage, and shipment of drugs and drug proceeds.

31. WHEREFORE, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. 2703(c)(1)(A), it is requested that the Court issue a warrant and Order authorizing agents of the DEA

and MSP to obtain the Requested Information for a period of thirty (30) days.

32.   There is "reasonable cause to believe that providing immediate notification of the execution of the warrant may have an adverse result." 18 U.S.C. § 3103a(b)(1). Providing prior notice to the subscriber or user of the Target Telephone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, or flee or continue his flight from prosecution.

33.   The execution of this warrant will not result in the seizure of any tangible property or any wire or electronic communication (as defined in 18 U.S.C. § 2510). To the extent that the warrant authorizes the seizure of any stored wire or electronic information, that seizure is expressly authorized by 18 U.S.C. § 2703(c)(1)(A).

34.   IT IS FURTHER REQUESTED that the Court direct AT&T to assist DEA and MSP agents by providing all information, facilities and technical assistance needed to ascertain the Requested Information, and further direct AT&T, the service provider for Harakaly Phones # 1 and # 2, to initiate a signal to determine the location of the either phone on the service provider's network or with such other reference points as may be reasonably available and at such intervals and times as directed by the law enforcement agent serving the proposed order, and to furnish the technical assistance necessary to accomplish the acquisition unobtrusively and with a minimum of interference with such services as that provider accords the user(s) of Harakaly Phones # 1 and # 2, for a period of thirty (30) days. Reasonable expenses incurred pursuant to this activity will be processed for payment by MSP.

35.   IT IS FURTHER REQUESTED that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate Harakaly Phones # 1 and # 2 outside

of daytime hours.

36. IT IS FURTHER REQUESTED that the warrant and this Affirmation, as it reveals an ongoing investigation, be sealed until further order of the Court in order to avoid premature disclosure of the investigation, guard against flight, and better ensure the safety of agents and others, except that working copies may be served on DEA and MSP agents and other investigative and law enforcement officers, federally deputized state and local law enforcement officers, and other government and contract personnel acting under the supervision of such investigative or law enforcement officers, and AT&T as necessary to effectuate the Court's Order.

37. IT IS FURTHER REQUESTED that, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), the Court authorize notice to be delayed for a period of thirty days after the termination of the monitoring period authorized by the warrant or any extensions thereof.

_____
Trooper Robert R. Cerra
Massachusetts State Police

Sworn to before me this 29 day of September, 2010

_____
HON. JUDITH G. DEIN
CHIEF UNITED STATES MAGISTRATE JUDGE
DISTRICT OF MASSACHUSETTS